## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MOHAMMED NOR, | CIVIL NO. 05-2999 DSD/AJB |
| PETITIONER, | |
| v. | |
| | REPORT AND RECOMMENDATION ON |
| SCOTT BANIECKE, FIELD DIRECTOR DETENTION AND REMOVAL, FOR BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, | PETITIONER'S WRIT OF HABEAS CORPUS |
| RESPONDENT. | |

Katherine Menendez, Assistant Federal Public Defender, on behalf of petitioner

Robyn A. Millenacker, Assistant United States Attorney, on behalf of the government

**I.    INTRODUCTION**

This matter is before the court, Magistrate Judge Arthur J. Boylan, on petition of Mohammed Nor's for a writ of habeas corpus under 28 U.S.C. § 2241. The matter has been properly referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c) for a report and recommendation to the district court. For the following reasons, this court recommends that the petition for habeas [Docket No. 1] be **granted** and a writ issued releasing Mohammed Nor from custody, subject to such terms and conditions as may be necessary to ensure that the Respondents will be kept appraised of his whereabouts pending his removal.

**II.    FACTUAL BACKGROUND**

1

Nor was born in Mogadishu, Somalia, on November 16, 1981 and entered this country under Refuge status on January 31, 1996. (A.R. 2-3.)[1] On entry, his status was adjusted to lawful permanent resident. (A.R. 6.) On August 7, 2002, Nor was convicted in the Des Moines Municipal Court, King County, Washington, for Assault in the fourth degree in violation of Wash. Rev. Code § 9A.36.041 ( a gross misdemeanor). (A.R. 40.) On July 23, 2003, he was convicted in Superior Court of Washington State for King county, for rendering criminal assistance in the Second Degree, in violation of Wash. Rev. Code §§ 9A.76.080(i)(2)(6) ( a gross misdemeanor) and 9A.76.050 (definition of rendering assistance). (A.R. 51.) On June 10, 2004, Nor plead guilty to Damage to Property in the First Degree in violation of Minn. Stat. § 609.595, Subd. 1(2) and was sentenced to one year plus one day. (A.R. 31.) This sentence was stayed for three years. (*Id.*) On October 26, 2004, Nor was convicted in Hennepin County Criminal Court for Theft of Motor Vehicle in violation of Minn. Stat. § 609.52, Subd. 2 (17).[2] (*Id*.) He was sentenced to 13 months, which was stayed, and received a sanction to serve 90 days in the workhouse. (*Id*.) Based on the felony conviction for theft of a motor vehicle, Nor was subject to removal from the United States pursuant to INS Act § 237(a)(2)(A)(iii). (*See id*.) On January 18, 2005, Nor was served an order for removal and was detained by ICE. (A.R. 8.) Nor did not contest his removal. (A.R. 16.) As of May 27, 2005, his order of removal became final. (*See* A.R. 112, 123.)

---

[1] A.R. refers to the administrative record.

[2] Nor has apparently been arrested for at least six felony auto related offenses. See A.R. 27.)

### III. LEGAL BACKGROUND

#### A. The Removal Period Generally

Under the Immigration and Nationality Act § 212(a)(2)(A)(i)(I), the government may deport an alien who has been convicted of committing a crime involving moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(i)(I). After an alien has been found removable, "the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1). This 90-day period is referred to as the "removal period." *Id*.

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231 (a)(2).

An alien may be detained beyond the removal period if the government has failed to remove the alien during the initial 90-day period. 8 U.S.C. § 1231 (a)(6). This post removal period detention statute does not explicitly place a limit on this further detention. The United States Supreme court addressed the issue of whether the period post-removal period could be indefinite. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). In *Zadvydas*, the government argued that because the statute set no time limit beyond the initial 90-day removal period, the statute allowed for the indefinite detention of a removable alien. *Id.* Noting that "[a] statute permitting indefinite detention of an alien would raise a

serious constitutional problem," the Court read into the statute an "implicit limitation" on the alien's post-removal detention period.[3] *Id*. at 689-90.   This implicit limitation, according to the Court, restricted the removal-period detention to "a period reasonably necessary to bring about that alien's removal from the United States." *Id*.  The court concluded that this period is presumptively six months. *Id*. at 701.  "After this six-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*.  The Court noted that, once an alien is released after the six-month post-removal detention period, the alien is not free to "live at large in this country," but is under supervision and must adhere to release conditions that may not be violated. *Id*. at 696.

In sum, under *Zadvydas*, an alien may be detained for an initial 90-day removal period under 8 U.S.C. § 1231(a)(1), followed by a second 90-day period in which detention is presumptively reasonable, and finally for an additional period of time in which the government must respond with evidence sufficient to rebut the alien's showing that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

### B.   The *Ali v. Ashcroft* Injunction

On November 17, 2003, the District Court of the Western District of Washington issued an injunction prohibiting the government from removing to Somalia any person in the class of

> [a]ll persons in the United States who are subject to orders of removal, expedited

---

[3] The Court based this interpretation of the statute on its long held practice of "ascertaining whether a construction of the statute is fairly possible by which the [Constitutional] question may be avoided." *Zadvydas*, 533 U.S. at 689 (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).

removal, deportation or exclusion to Somalia that are either final or that one or more of Respondents believe to be final, excluding any person with a habeas petition pending or on appeal, raising the issue of unlawful removal to Somalia under 8 U.S.C. § 1231(b).

*Ali v. Ashcroft*, 213 F.R.D. 390, 396 (W.D. Wash. 2003) *aff'd*, 346 F.3d 873 (9th Cir. 2003), *opinion withdrawn on denial of reh'g*, 421 F.3d 795 (9th Cir. 2005), *as amended on reh'g* (Oct. 20, 2005). The court based the injunction on its interpretation of 8 U.S.C. § 1231(b) which provides "a three step process to determine the country to which a removable alien should be sent after a final order of removal has been issued against him." *Id.* at 401. The *Ali* court determined that the statute requires the government of the country of removal agree to "accept" the alien prior to removal. *Id*. at 403. The court concluded that, because Somalia did not have a functioning government that could consent to or accept the removal of the petitioner by the U.S. Citizenship and Immigration Services' (USCIS) (formally known as U.S. Immigration and Naturalization Service (INS)), removal of petitioner to Somalia would violate the statute. *Id*. at 411. Accordingly, the court issued the injunction barring removal of any alien falling within the class. The court also ordered that three of the five named petitioners be released from detention pursuant to the Supreme Court's directions in *Zadvydas*. *Id*. at 411. The Ninth Circuit affirmed the district court's decision. *See Ali v. Ashcroft*, 346 F.3d 873 (9th Cir. 2003), *opinion withdrawn on denial of reh'g*, 421 F.3d 795 (9th Cir. 2005), *as amended on reh'g* (Oct. 20, 2005).

On January 12, 2005, the United States Supreme Court issued it opinion in *Jama v. ICE*, 543 U.S. 335 (2005). In *Jama*, the Court concluded, contrary to the decision reached by the Ninth Circuit in *Ali*, that the statute does not require consent from another country before an alien can be removed to that country. 543 U.S. at 352. The Court noted that to hold otherwise would result in the alien being

"left in the same removable-but-unremovable limbo as the aliens in *Zadvydas v. Davis* . . . and presumptively . . . released into American society after six months." *Id*. at 347. Thus, according to *Jama*, a removable alien may be removed to a county that lacks a centralized government that can consent to his removal. Subsequent to this decision, the Ninth Circuit withdrew its initial opinion affirming the district court's decision in *Ali*, noting that *Jama* precluded the assertion that the government may not remove an alien to Somalia based on the lack of a centralized government. The court remanded the matter to the district court with instructions to vacate the injunction. *Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005), *as amended on reh'g* (Oct. 20, 2005). The Ninth Circuit did not, however, vacate the district court's decision releasing the three petitioners under the rules set forth in *Zadvydas*. *Ali*, 421 F.3d at 797. The court observed that although the government had assured the courts otherwise, it has been unable to successfully remove Jama and that Jama appeared to have been released from custody. *Id*. at 797 n. 2.

## IV.  PARTIES' ARGUMENTS

The government argues that, lacking a ruling from the Washington District Court indicating otherwise, the injunction remains in place. Accordingly, the government asserts that, although Nor has been issued a final order of removal as of May 27, 2005, his removal period has been tolled under 8 U.S.C. § 1231(a)(1)(B)(ii) and will not begin to run until the injunction is removed by an order issued from the district court.[4] Nor argues that the Ninth Circuit's remand essentially vacated the injunction,

---

[4] The government's repeated argument that the *Ali* injunction has stayed the removal of all Somalia aliens within the *Ali* class and thus tolling the removal period during that stay, is contrary to the actions by the government. In another habeas case before the court, *Duale v. Baniecke*, 05-2998 JRT/AJB (D. Minn), which involves a Somali alien allegedly being held past the six-month *Zadvydas*

the REAL ID Act removed the district court's authority to issue such an injunction and in any event, the *Ali* injunction does not toll the post-removal detention period.

## V.   RECENT MATTERS BEFORE THIS COURT

### A.   *Moallin v. Cangemi*

This case is substantially similar to at least two other cases that have recently come before this court. In *Moallin v. Cangemi*, Civil No. 05-1826 JMR/SRN, petitioner, a Somalia citizen detained by the government pending removal, argued, as does Bashir in this case, that he should be released from custody because his detention exceeded the six month period prescribed under *Zadvydas*. The government, as here, argued that the petitioner was a member of the class affected by the *Ali* injunction and therefore, his removal period had been tolled during the stay. According to the government, because the period had been stayed by the injunction, the six month maximum had not begun to run. Magistrate Judge Susan Richard Nelson discussed six reasons why the *Ali* injunction did not apply to the petitioner. *See* Magistrate Judge Nelson's Report and Recommendation, *Moallin v. Cangemi*, Civil No. 05-1826 JMR/SRN, Docket No. 9 (January 17, 2006) (Nelson R&R). After thoroughly examining the applicable law, Magistrate Judge Nelson concluded that the petitioner's habeas should be granted. *Id*. at 36.

First, Magistrate Judge Nelson determined that the *Ali* injunction is not a stay within the meaning of 8 U.S.C. § 1231(a)(1)(B)(ii). Nelson R&R at 24. According to this section, the initial 90-day removal period begins on the date of a court's final order, [i]f the removal order is judicially

---

mandate, the government informed this court on April 24, 2006, that Duale had been successfully removed to Somalia, despite the government's assertion that Duale fell within the *Ali* class.

reviewed and if a court orders a stay of the removal of the alien." § 1231(a)(1)(B)(ii). Magistrate Judge Nelson noted that the a court stay referred to in the statute anticipated a determinable period of time in which the court would review the petitioner's removal order, and did not relate to an indeterminable time period based on the execution of a non-judicial event. This non-judicial event in the *Ali* case, the court explained, was for the injunction to be lifted by the development of a centralized government in Somalia, recognized by the United States.

Second, Magistrate Judge Nelson found that the legislative history of 8 U.S.C. § 1231(a)(1)(B)(ii) does not support a reading of the statute to include a stay as issued by the *Ali* court. Nelson R&R at 25. The court discussed the House of Representatives' Conference Reports and determined that the "report's language demonstrates that the stay contemplated is one where the petitioner appeals his removal order and the reviewing court issues a judicial stay of the execution of that removal order pending the court's final decision." *Id*. at 25-26.

Third, the court noted that the statutory scheme requires an individualized consideration of each petitioner's request for a stay of the removal period, noting that the *Ali* court did that when it determined that three of the five named petitioners should be released. *Id*. at 26.

Fourth, the court noted that the *Ali* injunction did not go to the merits of a petitioner's removal, but addresses the authority of the Attorney General to remove aliens to a country with no centralized government to recognize the removal. *Id*. Thus, not the type of stay anticipated by the statute.

Fifth, the court discussed the affect of the REAL ID Act of 2005. The REAL ID Act became effective May 11, 2005. Under the REAL ID Act, Congress removed the authority of the district courts to hear cases challenging removal orders. Therefore, according to Magistrate Judge Nelson, the

Western District of Washington's authority to impose an injunction was superceded by statute. Thus, according to the magistrate judge's report and recommendation, even if the *Ali* injunction had been applicable to the petitioner's removal period, the period would have begun on May 11, 2005, when the REAL ID Act became effective. *Id*. at 27-28.

The sixth and final reason that Magistrate Judge Nelson puts forth as reason the *Ali* injunction does not toll a petitioner's removal period is that, if the *Ali* injunction were to stay the removal period in 8 U.S.C. § 1231(a)(1)(B)(ii), "the same constitutional concerns raised in the Supreme Court's *Zadvydas* decision [would] apply to the pre-'removal period' under the unique circumstances presented in this case" where the government has been unable to remove the alien *Id*. at 28.

The government objected to the magistrate judge's report and recommendation. *Moallin,* Civil No. 05-1826 JMR/SRN*,* Docket No. 11 (February 3, 2006). The government argued that (1) the magistrate judge improperly concluded that the *Ali* injunction did not toll the time under *Zadvydas*; (2) the magistrate judge improperly found that there is no reasonable likelihood of the petitioner's removal to Somalia in the near futures and (3) the magistrate judge erroneously concluded that petitioner posed no serious threat to the community. *Id*. After a *de novo* review of the record, the district court adopted Magistrate Judge Nelson's Report and Recommendation and ordered that Moallin be released.[5] *Moallin,* Civil No. 05-1826 JMR/SRN*,* Docket No. 14 (April 13, 2006).

### B. *Ali v. Cangemi*

---

[5] The government has informed the court that it will be seeking review of the district court's decision in *Moallin* before the Eighth Circuit Court of Appeals.

A second case has also been before this court that addressed the application of the *Ali* injunction with somewhat similar circumstances. In *Ali v. Cangemi*, Civil No. 03-3189 DWF/JSM, Magistrate Judge Janie S. Mayeron issued a Report and Recommendation regarding the habeas petition of a removable alien of Somali descent, awaiting removal in detention. Magistrate Judge Mayeron found that the *Ali* injunction did not interrupt or stay the running of the six-month removal period in *Zadvydas*. Magistrate Judge Mayeron noted that the government failed to cite any authority for the proposition that the *Ali* injunction interrupted or stayed the post-removal detention period and that the explicit language of the *Ali* decision was contrary to that interpretation. The court recommended that the writ of habeas be granted.[6]

## VI.   Nor's Petition for Habeas

This court is in accord with the reasoning and legal analysis as set forth by Magistrate Judges Nelson and Mayeron in their respective report and recommendations. Thus, following the reasoning in *Moallin v. Cangemi*, Civil No. 05-1826 JMR/SRN, the court finds that the *Ali* injunction has not stayed Nor's post-removal detention period.

Nor has been detained by ICE since January 18, 2005. His final order of removal was issued

---

[6] Magistrate Judge Mayeron's Report and Recommendation was adopted by the district court and the court ordered Ali released. *Ali v. Cangemi*, Civil No. 03-3189 DWF/JSM Docket No. 22  The government appealed the matter to the Eighth Circuit and Ali's release was stayed pending resolution of the case.  *Id*. at Docket No.32.  A panel of judges from the Eighth Circuit affirmed the district court's grant of habeas. *Ali v. Cangemi*, 384 F.3d 989, 990 (8th Cir. 2004) (per curium). This decision was vacated however, by the court *en banc* due to the fact that while the matter was under consideration for a rehearing *en banc*, the government allegedly mistakenly released the petitioner. *Ali v. Cangemi*, 419 F.3d 722 (8th Cir. 2005) (vacating as moot the panel's earlier decision.).

on May 27, 2005. Thus, Nor has been detained well past the six-month limit mandated by *Zadvydas*. Under *Zadvydas*, after the presumptively reasonable six-month detention, the government must respond with evidence sufficient to rebut the alien's showing that "there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701.

Nor claims that there is a significant likelihood that the government will not be able to remove him due to the instability in Somalia and the lack of a centralized government. The court found in May 2005, that the Somali petitioner Jama, "is not likely to be removed in the reasonably foreseeable future and must therefore be released, subject, of course to any appropriate conditions." *Jama v. ICE*, Civil No. 01-1172 JRT/AJB, 2005 WL 1205160, at *7 (D. Minn. May 20, 2005). Although the government recently removed a Somalia alien, this court has no information as to why that removal was successful when many other Somali removals have not been executed. *See Duale v. Baniecke*, 05-2998 JRT/AJB (D. Minn); *Jama*, 2005 WL 1205160 at *7. The government has not presented, nor is the court aware of, any changes in circumstance that would demonstrate that the government is now more likely to be able to remove Nor to Somalia than it has been able to remove Jama.

## VII.   RECOMMENDATION

Based on the foregoing discussion, all the files, records and taking into consideration this court's position in previous analogous habeas cases,

**THE COURT HEREBY RECOMMENDS THAT**:

1. Nor's Federal Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **granted**; and

2. Nor be released subject to such terms and conditions as the court deems necessary in

11

order to ensure the Government access to and control over Nor pending removal.

Dated: <u>May 10, 2006</u>

<u>s/ Arthur J. Boylan</u>
Arthur J. Boylan
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **May 26, 2006.**